# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

# CENTRAL DIVISION

| | |
|---|---|
| ALAN J. PHIPPS,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES POSTAL SERVICE, et al.,<br><br>Defendants. | REPORT AND RECOMMENDATION<br><br>Case No. 2:09-cv-102-CW-PMW<br><br>District Judge Clark Waddoups<br><br>Magistrate Judge Paul M. Warner |

District Judge Clark Waddoups referred this case to Magistrate Judge Paul M. Warner pursuant to 28 U.S.C. § 636(b)(1)(B).[1] Before the court is Postmaster General John E. Potter's ("Defendant") motion to dismiss for lack of jurisdiction, lack of venue, and to transfer venue.[2] Pursuant to civil rule 7-1(f) of the United States District Court for the District of Utah Rules of Practice, the court elects to determine the motion on the basis of the written memoranda and finds that oral argument would not be helpful or necessary. *See* DUCivR 7-1(f).

As an initial matter, because Alan J. Phipps ("Plaintiff") is proceeding pro se, the court will "construe his pleadings liberally and hold the pleadings to a less stringent standard than formal pleadings drafted by lawyers." *Riddle v. Mondragon*, 83 F.3d 1197, 1202 (10th Cir. 1996). That said, the Tenth Circuit "has repeatedly insisted that pro se parties follow the same

---

[1] *See* docket no. 4.

[2] *See* docket no. 18.

rules of procedure that govern other litigants," *Nielsen v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994) (quotations and citation omitted), including the requirements of the local civil rules. *See Green v. Dorrell*, 969 F.2d 915, 917 (10th Cir. 1992). Furthermore, it is not "the proper function of the district court to assume the role of advocate for the pro se litigant." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). Having carefully considered Defendant's motion, the memoranda submitted by the parties and Plaintiff's complaint, this court recommends that Defendant's motion be granted.

## BACKGROUND

Plaintiff alleges the following facts in his Complaint.[3] Plaintiff is a former employee of the United States Postal Service ("USPS"), most recently employed at the Jacksonville, Florida Processing and Distribution Center ("Jacksonville Center"). Plaintiff claims that while working at the Jacksonville Center, he suffered discrimination based on age and disability from June 14, 2004, through January 2, 2009. Plaintiff alleges that Defendant failed to accommodate his medical restrictions from a previous on-the-job injury and that the purported limited-duty jobs he was given also led him to suffer additional injuries.

Count I of Plaintiff's complaint relates to a 2005 job offer sorting mail, his attempt to work in that position, and injuries he received by performing that job. Count II details Plaintiff's various injuries, his efforts to secure limited-duty employment from USPS, and USPS's treatment of him during 2005. Count III relates to a badge-checking job, offered in late 2005 and again in early 2006, and his displeasure with the position considering his training and education.

---

[3] *See* docket no. 3.

It also details an "assault" he suffered by a "disgruntled employee" who "lunged at [him] and screamed in [his] face" when he asked to see that employee's badge.[4] Plaintiff further asserts that the badge-checking job was merely "a management ploy to get [him] to quit and to deny [him] compensation."[5] Count IV is related to a September 2006 job offer that did not conform with his new treating physician's work prohibitions and recommendations. Count V concerns a November 2006 job offer and the circumstances surrounding it.

Count VI details Plaintiff's termination from employment and his challenge to that removal before the Merit Systems Protection Board ("MSPB"). Plaintiff was removed from employment at the USPS for "failure to maintain a regular work schedule–unauthorized absence–AWOL" effective February 29, 2008.[6] On March 27, 2008, Plaintiff appealed his termination before the MSPB, alleging that it was the result of discrimination based on age and disability. A hearing was held on July 2, 2008, with Plaintiff appearing via remote technology in Salt Lake City and the remainder of the witnesses appearing in Jacksonville, Florida. An initial decision was issued on July 30, 2008, affirming Plaintiff's termination. Plaintiff then appealed that decision, which was upheld by the full MSPB on December 22, 2008. Plaintiff was officially terminated from employment on January 2, 2009.

Plaintiff brings this action pursuant to a right to sue notice contained in the final decision of the MSPB. That notice advised him of his right to file a civil action against the agency on his

---

[4] Docket no. 3 at 11.

[5] *Id.* at 11.

[6] Docket no. 19-3 at 2.

3

claims in "an appropriate United States District court."[7] On January 21, 2009, Plaintiff filed the instant action in this court presumably under the Age Discrimination in Employment Act ("ADEA"), *see* 29 U.S.C. §§ 621 to 634, and the Rehabilitation Act.[8] *See* 29 U.S.C. § 794(a).

## DISCUSSION

### A. Exhaustion of Administrative Remedies

Defendant argues that this court lacks jurisdiction over Plaintiff's first five causes of action because he failed to exhaust his administrative remedies under the Rehabilitation Act and the ADEA. Defendant asserts that while Plaintiff did receive a right to sue with respect to his termination, the first five counts were based on events that were independent from his termination. And, Defendant argues, Plaintiff failed to raise any issue of discrimination with a USPS Equal Employment Opportunity ("EEO") counselor regarding the alleged discriminatory acts described in Counts I through V as required. Therefore, Defendant concludes, the first five counts should be dismissed for failure to exhaust administrative remedies. This court agrees.

### 1. Rehabilitation Act

Congress has waived the federal government's sovereign immunity for suits alleging discrimination in federal employment on the bases of race, sex, color, religion, and national origin as provided under Title VII, *see* 42 U.S.C. § 2000e-16, as well as for claims of disability

---

[7] Docket no. 3 at 5.

[8] While Plaintiff's complaint states that he is bringing his claims under Title VII of the Civil Rights Act of 1964, *see* 42 U.S.C. §§ 2000e to 2000e-17, he alleges discrimination on the basis of disability and age only. As such, the court will view his claims as being brought under the ADEA and the Rehabilitation Act.

4

discrimination under the Rehabilitation Act. *See* 29 U.S.C. § 794a(a)(1) (declaring the "remedies, procedures, and rights" of Title VII applicable to claims of discrimination under the Rehabilitation Act). However, as a precondition to filing suit in federal court, Title VII (and consequently the Rehabilitation Act) requires federal employees alleging discrimination in federal employment to exhaust administrative remedies. *See Brown v. Gen. Servs. Admin.*, 425 U.S. 820, 832 (1976); *Woodman v. Runyon*, 132 F.3d 1330, 1341 (10th Cir. 1997) (applying exhaustion requirement of Title VII to Rehabilitation Act).

Under the Civil Service Reform Act ("CSRA"), "a federal employee may assert Title VII and Rehabilitation Act claims that arise out of adverse employment actions which are also appealable to the MSPB." *Harms v. I.R.S.*, 321 F.3d 1001, 1005 (10th Cir. 2003); *see also* 5 U.S.C. §§ 1201-1222. Actions that are appealable to the MSPB include (1) removal from employment, (2) suspension for more than 14 days, (3) reduction in grade, (4) reduction in pay, and (5) furlough of 30 days or less. *See* 5 U.S.C. § 7512. A federal employee may file either a "mixed case complaint" with the federal agency's EEO Office or a "mixed case appeal" with the MSPB but not both. 29 C.F.R. 1614.302(a)-(b). "The administrative exhaustion requirement applies regardless of which administrative path the federal employee elects." *Coffman v. Glickman*, 328 F.3d 619, 624 (10th Cir. 2003). In this matter, Plaintiff elected to file a mixed case appeal with the MSPB alleging that his removal "was effected, in whole or in part, because of discrimination on the basis of race, color, religion, sex, national origin, disability, age or genetic information." 29 C.F.R. § 1614.302(a)(2).

Claims of employment discrimination against the federal government must satisfy various regulatory pre-filing requirements to be viable. *See id.* §§ 1614.101 to 1614.110. Specifically, a federal employee must first initiate contact with an agency EEO counselor "within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action." *Id.* § 1614.105(a)(1). However, the 45-day limit may be extended if the employee can demonstrate that he "was not notified of the time limits and was not otherwise aware of them," that he "did not know" and that it "reasonably should not have been known that the discriminatory matter or personnel action occurred, that despite due diligence he . . . was prevented by circumstances beyond his . . . control from contacting the counselor within the time limits, or for other reasons considered sufficient by the agency or the Commission." *Id.* § 1614.105(a)(2).

In this case, Plaintiff raised only allegations of age and disability discrimination in his mixed-case appeal to the MSPB regarding his termination. Plaintiff has not raised any claims of discrimination before the USPS's EEO Office related to previous job offers or other alleged discriminatory actions occurring between 2004 and 2008.[9] Furthermore, Plaintiff has failed to demonstrate that the 45-day limit should be tolled. *See id.* Specifically, Plaintiff has not alleged that he was unaware of the 45-day limit for seeking relief, that he did not know that the discriminatory and/or personnel action occurred, or that he was prevented from contacting the EEO office of the USPS. *See id.* Plaintiff did not seek counseling from a USPS EEO counselor

---

[9] *See* docket no. 19-2.

regarding any of the alleged discriminatory acts raised in Counts I through V within the 45-day limit. *See id.* § 1614.105(a)(1).

In addition, it is well settled that "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges. Each discrete discriminatory act starts a new clock for filing charges alleging that act." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002). Each of the job offers in the first five counts is a discrete act that would have restarted the 45-day limitations period. Thus, any alleged discriminatory action that occurred 45 days prior to Plaintiff's March 27, 2008 MSPB appeal would be time barred. That said, Plaintiff would not be barred "from using the prior acts as background evidence in support of [his] timely claim." *Id.*

Based on the foregoing, this court concludes that Plaintiff has failed to exhaust his administrative remedies under the Rehabilitation Act with regard to Counts I through V.

### 2. ADEA

Under the ADEA, a federal employee who believes he has been discriminated against on the basis of age has two alternative avenues of relief available. The employee may file a formal complaint with the Equal Employment Opportunity Commission ("EEOC") and pursue an administrative remedy, *see* 29 U.S.C. § 633a(c), or the employee may file a "notice of intent to sue" with the EEOC within 180 days of the alleged age discrimination, provided the notice was filed with the EEOC at least 30 days before suit is commenced. *Id.* § 633a(d).

Because Plaintiff alleged age discrimination in his MSPB appeal, this serves to exhaust as to any claim of age discrimination as it relates to his removal from employment. However,

7

Plaintiff has not exhausted his administrative remedies as to any other claims of age discrimination. Plaintiff did not file a formal complaint or a notice of intent to sue with the EEOC. Thus, Plaintiff's claims of age discrimination occurring prior to his termination are untimely and should be dismissed.

Based on the foregoing, this court concludes that Plaintiff has failed to exhaust his administrative remedies under the ADEA with regard to Counts I through V. Accordingly, this court recommends to the district court that Counts I through V of Plaintiff's complaint be dismissed.

### B. Venue

Defendant argues that venue is improper in this district on Plaintiff's remaining Rehabilitation Act claim and that, in the interests of justice, this case should be transferred to the Middle District of Florida. Defendant filed a declaration demonstrating that (1) the records related to Plaintiff's injuries and job offers are retained at the Jacksonville Center's human resources office;[10] (2) Plaintiff's removal was initiated and finalized in Jacksonville, Florida, and all records related to his removal are retained in USPS facilities in Jacksonville, Florida;[11] (3) all of the potential witnesses for the USPS in this case live and work in the Jacksonville, Florida, area except for one, who lives and works in Memphis, Tennessee;[12] and (4) Plaintiff's additional potential witnesses set forth in his complaint are or were working in the Jacksonville, Florida

---

[10] *See* docket no. 19-3, ¶ 8.

[11] *See id.* ¶¶ 4, 7.

[12] *See id.* ¶¶ 5-6, 9-11.

area.[13] In response, Plaintiff contends that (1) his physical condition would make it very difficult for him to pursue this case in Florida; (2) his injury claims were transferred to the Denver, Colorado Office of Workers' Compensation Program ("OWCP") when he moved to Utah; (3) "all OWCP files are scanned at their London, KY office and can be read digitally by any branch";[14] (4) the USPS files are available digitally; (5) USPS's own regulations provide that "[e]very effort must be made to reemploy the individual at a postal facility within the area of his or her present place of residence";[15] and (6) the Jacksonville Center's supervisors, managers, and injury compensation specialist "would be prone to cover up their errors and neglect if allowed to reinterpret the job offers which failed to protect" him.[16]

Plaintiff has the burden to establish that venue is proper in this district as to each claim or cause of action. *See Gwynn v. TransCor Am.*, 26 F. Supp. 2d 1256, 1261 (D. Colo. 1998). Because Plaintiff brings his claims under both the Rehabilitation Act and the ADEA, venue must be proper under both statutes.

The Rehabilitation Act incorporates the specific venue provisions of Title VII. *See* 29 U.S.C. § 794a(a)(1). Under Title VII, Plaintiff's Rehabilitation Act claim

> may be brought in any judicial district in the State in which the unlawful employment practice is alleged to have been committed, in the judicial district in which the employment records relevant to such practice are maintained or

---

[13] *See id.* ¶ 11.

[14] Docket no. 27 at 4.

[15] *Id.* at 5.

[16] *Id.* at 6.

9

> administered, or in the judicial district in which the aggrieved person would have worked but for the alleged unlawful employment practice, but if the respondent is not found within any such district, such an action may be brought within the judicial district in which the respondent has his principal office.

42 U.S.C. § 2000e-5(f)(3).[17] Plaintiff has failed to demonstrate that Utah is a proper venue for his Rehabilitation Act claim. Plaintiff's complaint establishes that the alleged improper conduct occurred in Jacksonville, Florida and that he would have continued working in Jacksonville, Florida had it not been for the alleged discrimination. *See id.* Furthermore, the declaration provided by Defendant demonstrates that Plaintiff's employment records were maintained and administered in Florida. *See id.*; *see also Washington v. Gen. Elec. Corp.*, 686 F. Supp. 361 (D.D.C. 1988) ("Although Congress could easily have written the statute to make venue proper in *any* judicial district in which employment records may be found, it did not choose to do so. . . . Congress intended venue to lie on the basis of the presence of records only in the one judicial district in which the complete, master set of employment records is maintained and administered." (quotations omitted)). Accordingly, this court concludes that the District of Utah is not a proper venue for Plaintiff's Rehabilitation Act claim.

However, venue would proper in the Middle District of Florida on Plaintiff's Rehabilitation Act claim because it (1) is where the alleged unlawful employment practice occurred, (2) is where the employment records are maintained, and (3) is where Plaintiff would

---

[17] This court, however, does not consider the last option because Defendant is found within a district provided for by at least one of the other three provisions of 42 U.S.C. § 2000e-5(f)(3).

have worked had it not been for the alleged discriminatory actions. *See* 42 U.S.C. § 2000e-5(f)(3).

Under the ADEA, venue is controlled by the general venue statute found in 28 U.S.C. § 1391. The applicable portion of that statute provides:

> A civil action in which a defendant is an officer or employee of the United States or any agency thereof acting in his official capacity or under color of legal authority, or an agency of the United States, or the United States, may, except as otherwise provided by law, be brought in any judicial district in which (1) a defendant in the action resides, (2) a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) the plaintiff resides if no real property is involved in the action.

28 U.S.C. § 1391(e). Thus, venue would be proper in the Middle District of Florida on Plaintiff's ADEA claim because Defendant resides there and a substantial part of the events occurred in that district. Venue would also be proper in the District of Utah because this is where Plaintiff resides and there is no real property involved in this case.

The court's options are to either transfer the entire case to the Middle District of Florida or to dismiss Plaintiff's Rehabilitation Act claim for lack of venue and retain the ADEA claim. Transfer of venue is governed by 28 U.S.C. § 1404(a), which provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The Tenth Circuit has held that "the question of whether to dismiss or transfer an action filed in an improper venue is within the district court's sound discretion." *Ballesteros v. Ashcroft*, 452 F.3d 1153, 1160 (10th Cir. 2006) (quotations and citation omitted).

The party seeking transfer under 28 U.S.C. § 1404(a) bears the burden of demonstrating that the existing forum is inconvenient. *See Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1515 (10th Cir. 1991). This court concludes that Defendant has met its burden. Although, Plaintiff's choice of forum is generally given considerable weight, *see Scheidt v. Klein*, 956 F.2d 963, 965 (10th Cir. 1992), Defendant has established that the Middle District of Florida would be a far more convenient forum. Almost all of the witnesses are in Florida; Plaintiff's employment records are in Florida; the community of Jacksonville, Florida has a much greater interest in hearing and resolving this matter; and judicial economy will be served if this matter is transferred to Florida.

While the court is sympathetic to Plaintiff's situation, he has not made a compelling or even persuasive argument in opposition to Defendant's motion to transfer the this case. As such, this court recommends to the district court that the remainder of this action be transferred to the Middle District of Florida.

## **CONCLUSION**

Based on the foregoing, **IT IS HEREBY RECOMMENDED** that Defendant's motion be **GRANTED**. Specifically, this court recommends that Counts I through V be dismissed for failure to exhaust administrative remedies, and the remainder of the action be transferred to the Middle District of Florida.

Copies of this Report and Recommendation are being sent to all parties, who are hereby notified of their right to object. *See* 28 U.S.C. § 636(b)(1). The parties must file any objection

to this Report and Recommendation within fourteen (14) days after receiving it. *See id.* Failure to object may constitute waiver of objections upon subsequent review.

**IT IS SO ORDERED**.

DATED this 14th day of March, 2011.

BY THE COURT:

PAUL M. WARNER
United States Magistrate Judge